UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        *Plaintiff,*

        *v.*                            Case No. 25-cr-103

RYAN SCHROEDER,

        *Defendant.*

---

## DEFENDANT'S MOTION TO SUPPRESS STATEMENTS AND EVIDENCE

---

Please take notice that Ryan Schroeder, by his attorney Jason D. Luczak of Gimbel, Reilly, Guerin & Brown LLP, will move the Court, the Honorable Byron B. Conway presiding, on a date and time to be set by the court, for an order suppressing the use of all evidence obtained through illegally obtained statements, oral or written, allegedly made by Mr. Schroeder to law enforcement officers or any other governmental officials or their agents, and any evidence derived from those statements.

Mr. Schroeder asserts that the statements were obtained in violation of the rights guaranteed him under the 4th, 5th, 6th, and 14th Amendments to the United States Constitution. *Harris v. New York,* 401 U.S. 222 (1971); *Terry v. Ohio,* 392 U.S. 1 (1968); *Miranda v. Arizona*, 384 U.S. 436 (1966); *Lynumn v. Illinois,* 372 U.S. 528 (1963); *Mapp v. Ohio,* 367 U.S. 643 (1961); *Trupiano v. United States*, 334 U.S. 699 (1948); *Brown v. Mississippi*, 297 U.S. 278 (1936); *Weeks v. United States,* 232 U.S. 283 (1914).

Additionally, Mr. Schroeder moves for exclusion from use as evidence all derivative evidence, otherwise known as "fruit from the poisonous tree including the search warrants obtained using the illegally seized information." *Taylor v. Alabama*, 457 U.S. 687 (1982); *Dunaway v. New York*, 442 U.S. 200 (1979); *Brown v. Illinois*, 422 U.S. 590 (1975); *Davis v. Mississippi*, 394 U.S. 721 (1969); *Wong Sun v. United States*, 371 U.S. 471 (1963); *Silverthorne v. United States*, 251 U.S. 385 (1920).

## CRIMINAL LOCAL RULE 12 STATEMENT REQUESTING AN EVIDENTIARY HEARING

Pursuant to Criminal Local Rule 12(c), Mr. Schroeder requests an evidentiary hearing. The parties agree that an evidentiary hearing is necessary in order for the court to consider evidence related to factual disputes: whether Mr. Schroeder was in custody for the purposes of *Miranda* warnings, whether Mr. Schroeder was being interrogated, whether there was a valid *Miranda* waiver, whether any subsequent waiver was tainted by the un-*Mirandized* interrogation, and the extent of suppression based on the fruit of the poisonous tree doctrine. The parties request that the hearing be before the Honorable Byron Conway and further that the parties be allowed to file briefs subsequent to the hearing. The parties expect the hearing to take two to three hours.

Mr. Schroeder moves the court to find that law enforcement violated his *Miranda* rights and that his statements along with any evidence obtained as a result thereof be suppressed based on the fruit of the poisonous tree doctrine. Further, any subsequent waiver of *Miranda* was coercive and must be suppressed.

2

## STATEMENT OF RELEVANT FACTS

On April 16, 2025, Detective Steber of the Manitowoc Sheriff's Department and Detective Brooks of Mishicot Police Department were investigating allegations of child enticement that took place in Manitowoc County Wisconsin. (Ex. 1000—Reports_000125-133). The investigation was initiated based on a complaint from Victim 2, who reported receiving explicit photographs from Ryan Schroeder, who was her physical education teacher at Mishicot High School. (*Id.*).

Detectives Steber and Brooks met with Victim 2. During their initial interview she disclosed sending nude photographs to Mr. Schroeder via Instagram, and Mr. Schroeder was allegedly sending them in return. (*Id*). Victim 2 provided law enforcement with her cell phone to corroborate her allegations. (*Id.*).  Following the interview, Detective Steber requested that Mishicot School District Superintendent Cory Erlandson locate Mr. Schroeder and bring him into a private conference room to speak with him. (*Id.*). Upon Mr. Schroeder's arrival, Detective Steber closed the door and immediately instructed Mr. Schroeder that the two "gotta talk," and asked him "what would prompt you talking to a detective at the sheriff's office and Mr. Brooks with Mishicot PD?" (Ex. 1001—Ryan interview MHS at 0:00:18-0:00:30). According to Detective Steber, Mr. Schroeder at this time was pacing and appeared to be very nervous. (Ex. 1000 at 1).

Detective Steber began to interrogate Mr. Schroeder. When Mr. Schroeder denied knowledge of why he would need to speak with law enforcement, Detective Steber immediately articulated his clear understanding of their meeting, stating "I think you

do." (Ex. 1001 at 00:00:30-00:00:38)[1]. After pressuring Mr. Schroeder to cooperate, Detective Steber told Mr. Schroeder in no uncertain terms to give him his phone, and when asked why, Steber said "because I am going to take it." (*Id.* at 00:00:55-00:01:03). After this, Detective Steber stated "that being said, it is an investigation for electronics and stuff you were doing with them," additionally told Mr. Schroeder to hand over his iWatch, and then asked Mr. Schroeder for the password to open and access his phone. (*Id.* at 00:01:08-00:01:36).

After a brief exchange of the nature of the questioning wherein Mr. Schroeder was asked to discuss the situation, Detective Steber instructed Mr. Schroeder that he "probably ha[d] an idea why [they were t]here, and this [was his] opportunity to kind of come clean." (*Id.* at 00: 01:52-00:02:14). This exchange was followed by a message from Detective Steber in a clearly intimidating tone, where he threatened Mr. Schroeder with phrases like "if I catch you in a lie…because…I will ask a question I already know the answer to," and "tell me about what mistakes you made…and I will fill in the gaps as we go." (*Id.* at 00:02:51-00:03:19). Throughout the exchange, when prompting Mr. Schroeder through questions, Detective Steber would repeatedly state that he either already knew the information, or knew the answers to the questions, or was seeking additional details about the allegations and potential images or files. (*Id.* at 00:03:53-00:07:15, 00:07:27-00:09:36, 00:14:09-00:24:16, 00:25:19-00:26:19, 00:26:33-00:28:35). This includes information about both Victim 1 and Victim 2. (*Ibid.*).

---

[1] It is the intent of the defense to admit these video exhibits into evidence at the hearing requested on this matter. If the court would prefer to view these exhibits now, the defense can provide them to the court.

Whenever Mr. Schroeder hesitated to continue answering questions, Detective Steber told Mr. Schroeder that "your best angle at this point is to continue and keep it up," (*Id.* at 00:07:17-00:07:26), even though Mr. Schroeder had explicitly asked and been informed that he was looking at "a criminal offense" and that the next step was to obtain search warrants for all of his electronic devices. (*Id.* at 00:09:36-00:10:05). Steber instructed him that the next steps were dependent on what they found, what they learned, and that his interview was a "big part of it," and how "that looks and how that is completed is based on your cooperation." (*Id.* at 00:10:15-00:10:30). When asked if he was going to jail, Detective Steber replied "it depends…we have a couple of other things going on that you are not aware of, and once those are done that may dictate it," and that his cooperation was a big part of that decision. (*Id.* at 00:10:49-00:11:57). Detective Steber also explained that "what can't happen is that we walk away and pretend like this never happened," and that is why he said to "get ahead of it" and "explain your side" of the story. (*Id.* at 00:11:58-00:12:30). Near the end of the initial interview, Detective Steber told Mr. Schroeder that he "need[ed] to go through" his phone and asked for his passwords and FaceID to search through his phone and his Snapchat account. (*Id.* at 00:24:17-00:25:18, 00:26:20-00:26:32). After a brief break, Detective Steber brought additional law enforcement and instructed Mr. Schroeder that he wanted to discuss the details "in a more controlled setting" and placed him into handcuffs. (Ex. 1002—Ryan interview continued at 00:00:56-00:03:00).

After being placed in handcuffs and taken to the Manitowoc County Sheriff's Department, Detective Steber continued questioning Mr. Schroeder. (Ex. 1003 —

Schroeder Interview 1 at 00:37:00). Detective Steber told Mr. Schroeder that at that point, they were in a spot that required having tough conversations that they'd already had at the school. At this point, Mr. Schroeder was finally advised of his *Miranda* rights. (*Id.* at 00:38:05-00:39:04). Following the advisement of his rights, Detective Steber continued questioning Mr. Schroeder about the extent and nature of his alleged relationship with Victim 1. (*Id.* at 00:44:10-01:20:04); (Ex. 1004—Schroeder Interview 2 at 00:00:00-00:03:20, 00:04:26-00:11:46, 00:35:08-00:37:22, 00:45:35-00:47:19, 00:53:35-01:07:30, 01:12:15-01:13:40, 01:17:57-01:20:04); (Ex. 1005—Schroeder Interview 3 at 00:00:00-00:01:53).  During this final interview, after already having opened and searched Mr. Schroeder's phone and Snapchat account without his consent or a warrant before they even left the school grounds, Detective Steber finally sought and obtained Mr. Schroeder's consent to search his phone. (Ex. 1004 at 00:11:46-00:13:00); (Ex. 1000 at 3).

### ARGUMENT

I.    **Mr. Schroeder's Fifth Amendment rights were violated when law enforcement failed to advise him of his *Miranda* rights prior to subjecting him to prolonged custodial interrogation and through continued use of coercive pressure and deceptive tactics to elicit an involuntary confession and incriminating information.**

The Fifth Amendment of the United States Constitution and Article I, Section 8 of the Wisconsin Constitution protect any citizen from becoming a witness against themselves, *i.e.*, being compelled to produce self-incriminating testimony, in a criminal matter.  U.S. CONST. AMEND. V; WIS. CONST. ART. I, SEC. 8.

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court ruled that in a custodial interrogation setting, law enforcement officers must sufficiently warn an

individual of their Fifth Amendment privilege against self-incrimination. If no such warnings occur, the statements are inadmissible. *Id.* at 492. However, *Miranda* warnings are not required merely because the person being questioned is a suspect or the focus of a criminal investigation. *United States v. Barker,* 467 F.3d 625, 628 (7th Cir. 2006).

*Miranda* safeguards come into play whenever a person "in custody" is subjected to either express questioning or its functional equivalent. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980); *Berkemer,* 468 U.S. at 428, 104 S.Ct. 3138; *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602. A person is "in custody" for *Miranda* purposes if there was a formal arrest or a restraint on his or her freedom of movement of the degree associated with a formal arrest. *J.D.B. v. North Carolina*, 131 S.Ct. 2394, 2402 (2011); *United States v. Podhorn,* 549 F.3d 552, 556 (7th Cir. 2008). This inquiry is an objective one, as neither the subjective views of the suspect being questioned nor that of the officer engaging in the questioning is considered. *Yarborough v. Alvarado,* 541 U.S. 652, 663 (2004); *United States v. Ambrose*, 668 F.3d 943, 954 (7th Circ. 2011).

Determining whether a person was "in custody" for *Miranda* requires addressing two critical inquiries, determining: (1) what were the circumstances surrounding the interrogation; and (2) would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave. *Ambrose*, 668 F.3d at 954-955; *J.D.B.,* 131 S.Ct. at 2402; *Podhorn,* 549 F.3d at 556. The government has the burden of demonstrating a valid waiver of the defendant's waiver of *Miranda* rights and the voluntariness of the confession by a preponderance of the evidence. *United States v. Stewart,* 536 F.3d 714, 722 (7th Cir.2008).

As detailed as follows, Mr. Schroeder was in custody when Detective Steber began interrogating him at the Mishicot High School, and the decision not to advise him of his *Miranda* rights prior to questioning demands this court suppress his alleged statements.

**A. Mr. Schroeder was in custody for the purposes of *Miranda* at the time of the initial interview, and the circumstances around his questioning clearly demonstrate that law enforcement was required to advise him of his rights.**

Interrogation that would trigger the *Miranda* requirements includes questioning by the officers or any words or actions that the officers know or should know are reasonably likely to elicit an incriminating response. *United States v. Swanson,* 635 F.3d 995, 1001-02 (7th Cir. 2011); *United States v. Richardson,* 657 F.3d 521, 525 (7th Cir. 2011). A statement is voluntary only if, in light of the totality of the circumstances, it is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that overcome the defendant's free will. *Richardson,* 657 F.3d at 525. Coercive police activity is a necessary predicate to determining that a confession is involuntary. *Richardson,* 657 F.3d at 525.

For *Miranda* purposes, "interrogation" means the express questioning or its functional equivalent. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Whether an interrogation occurred is determined by a test that is both objective and subjective in nature. *Id.* at 302, n. 7. Meaning, the critical analysis focuses on whether an objective observer could conclude that the officer's conduct or words would be likely to elicit an incriminating response. *Id.* at 301. The subjective nature remains on whether the officer

"*should have known*" were reasonably likely to elicit an incriminating response. *Id.* at 302. (emphasis in original).

Reaching the question of whether an interrogation occurred, factors that courts are to consider include non-exhaustive areas of whether:

(1) the encounter occurred in a public place;

(2) the suspect consented to speak to the officers;

(3) the officers informed the individual that he was not under arrest;

(4) the individuals were moved to another area;

(5) there was a threatening presence of several officers and a display of weapons or physical force;

(6) the officers deprived the suspect of documents needed to depart; and

(7) the officers' tone of voice was such that their requests would likely be obeyed.

*Barker,* 467 F.3d at 629.

In this case, it is expected that the evidence will establish that an objective observer would conclude that words and conduct of the officer would likely elicit an incriminating response. Mr. Schroeder was ripped away from his job, dragged into a closed conference room in which law enforcement immediately instructed him that they needed to talk. (Ex. 1001 at 0:00:18-0:00:30). Mere seconds into the exchange, Mr. Schroeder was instructed that law enforcement was confiscating his electronics. (*Id.* at 0:00:30-0:00:55). Nowhere in the tone of voice, the questions used, or the law enforcement's direction of force using the school superintendent to direct Mr. Schroeder to remain in the conference room for law enforcement's arrival is there any indication that the circumstances of the exchange were anything less than an interrogation.

9

The focus of Detective Steber's arranged meeting was not to convey information to Mr. Schroeder. This was systematic interrogation for *Miranda* purposes because Detective Steber should have known that confronting Mr. Schroeder with evidence of his guilt was likely to elicit an incriminating response, and the government cannot argue otherwise. *Ambrose*, 668 F.3d at 954-956. This is especially true after he closed them in a room and told Mr. Schroeder he needed to comply and speak with him and sought to incriminate Mr. Schroeder without advising him of his rights.

The words and actions of law enforcement demonstrate an objective understanding that their subjective intent was to elicit incriminating statements from Mr. Schroeder. *Innis*, 446 U.S. at 301. This is evidenced by the initial contact with Mr. Schroeder in a closed conference room, the immediate questioning regarding items on his person and the intimate details surrounding Victim 2's allegations, and the transition to in-depth questioning about Victim 1. These actions by law enforcement clearly demonstrate an intent to elicit incriminating information and circumvent fundamental constitutional protections under *Miranda*.

Once a person is determined to be in custody, the second inquiry considers whether Mr. Schroeder was subjected to interrogation.

**B.  Law enforcement's actions demonstrate that no objective person would have remained free to leave when they began questioning Mr. Schroeder.**

To establish whether an individual was in custody at the time of their questioning they must show they were subjected to formal arrest, or restraints of freedom "closely approximated or actually attained." *United States v. Lennick*, 917 F.2d 974, 977 (7th Cir.

1990); *United States v. Patterson*, 826 F.3d 450, 455 (7th Cir. 2016). Determining whether a person would have felt free to leave is an objective test of whether a reasonable person under the same circumstances as Patterson would have felt free to leave. *Yarborough v. Alvarado*, 541 U.S. 652, 662–63 (2004); *United States v. Snodgrass,* 635 F.3d 324, 327 (7th Cir.2011) (Fifth Amendment); *United States v. Mendenhall,* 446 U.S. 544, 553 (1980) (Fourth Amendment).

In determining whether a reasonable person in the accused's shoes would have felt free to leave, courts consider "all of the circumstances surrounding the interrogation." *Howes v. Fields*, 132 S.Ct. 1181, 1189 (2012). Assessing the circumstances, courts consider:

1. the location of the interrogation
2. the duration of the interrogation
3. any statements made by the suspect during the interrogation
4. any use of physical restraints during the interrogation
5. whether the suspect was released at the end of the interrogation.

*See Id.* at 1189.

The first words exchanged between Mr. Schroeder and Detective Steber upon meeting were in the form of a demand by Detective Steber, followed by the closing of a door in a small conference room. (Ex. 1001 at 0:00:18-0:00:30). Mr. Schroeder was an unwitting participant in this whole endeavor. Mr. Schroeder was called to the office, brought into conference room, and instructed to remain there by his boss and was essentially ordered to report to the meeting as part of his job. Whenever Mr. Schroeder hesitated to continue answering questions or attempted to think through his next

11

moments, Detective Steber pressed on and continued the questioning, telling Mr. Schroeder that his "best angle at this point is to continue and keep it up." (*Id.* at 00:07:17-00:07:26). During the entire interview, at no point was Mr. Schroeder left alone. Law enforcement was either actively interrogating him, flanking the door, or taking turns watching him. (*See generally* Exs. 1000 - 1005). These actions took place throughout his time in custody both at the high school as well as at the police department after law enforcement placed him in handcuffs and transported him. At no point would an objective observer have believed that they remained free to leave.

The facts before this court support that, to any reasonable person, Mr. Schroeder was in custody throughout this entire exchange, and he was to be advised of his *Miranda* rights prior to being subjected to rigorous questioning by law enforcement.

**C. Law enforcement's decision to advise Mr. Schroeder of his *Miranda* rights after subjecting him to prolonged questioning, searching his phone and Snapchat account, and transporting him to a room for questioning at the Manitowoc County Sheriff's Department demonstrates a deliberate and intentional effort to avoid providing him with knowledge of his constitutional rights.**

It is a bedrock understanding that an involuntary confession is a violation of due process rights under the U.S. Constitution. *Rogers v. Richmond*, 365 U.S. 534, 540 (1961). Courts disfavor tactics used to subvert those protections and a "ruse entry, by its very nature, runs contra to the concept of an intelligent consent or waiver." *See United States v. Phillips*, 497 F.2d 1131, 1135 n.4 (9th Cir. 1974).

The deceptive tactics and methods used by law enforcement render any statements offered by Mr. Schroeder involuntary. *Richardson,* 657 F.3d at 525. Only after

12

receiving incriminating statements, being transported to the police department, and being questioned for extensive periods of time, did Detective Steber advise Mr. Schroeder of his *Miranda* rights—conveniently only after incriminating statements were made and he was placed in handcuffs and transported off school grounds for continued interrogation.

Law enforcement took the same approach to questioning Mr. Schroeder in violation of *Seibert*, and both sets of Mr. Schroeder's statements should be suppressed along with any evidence derived from those illegally obtained statements. These actions taken by law enforcement are directly prohibited under *Missouri v. Seibert*, 542 U.S. 600 (2004), for the proposition that it is impermissible for police to withhold *Miranda* warnings until after questioning a suspect. There, police intentionally withheld *Miranda* warnings and conducted a custodial interrogation of *Seibert*. *Id.* at 604-05. After Seibert made incriminating statements, police gave Seibert her *Miranda* warnings and conducted a repeated interrogation. *Id.* at 605. The court found that Seibert's post-*Miranda* statements were inadmissible because, on these facts, the warnings did not serve the purpose of *Miranda*. *Id.* at 617.

*Siebert* stands for the constitutional demands that *Miranda* warnings, "inserted in the midst of coordinated and continuing interrogation, … are likely to mislead and 'deprive a defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them.'" *Id.* at 613 (quoting *Moran v. Burbine*, 475 U.S. 412, 424, 89 L. Ed. 2d 410, 106 S. Ct. 1135 (1986)).

Mr. Schroeder would not have spoken with law enforcement, nor would he have done so after being read his rights had he been advised of his *Miranda* rights at the beginning. Seeing no other way out, Mr. Schroeder relied upon the continued direction and assertions from law enforcement to cooperate and answer their questions. This tactic was intentional and coercive.

The actions of law enforcement demonstrate a disregard for Mr. Schroeder's constitutional rights. The compelled nature of his statements is clear, and the actions of law enforcement to later *Mirandize* him as a post hoc cure to their actions articulates a clear subversion of constitutional protections and demands broad suppression.

II. **The unconstitutional search of Mr. Schroeder's cell phone without a warrant demands suppression as the use of information discovered during the warrantless search for continued un-*Mirandized* questioning in addition to the deception and coercive pressure by law enforcement to search his cellphone are fruits of the poisonous tree, and cannot be purged of taint and the exclusionary rule demands suppression.**

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated" and that "no Warrants shall issue, but upon probable cause[.]" U.S. CONST. amend. IV.

A search or seizure conducted without a valid warrant is presumptively unreasonable. *United States v. Ross,* 456 U.S. 798, 824-25, (1982). A particular warrant also "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his [or her] need to search, and the limits of his [or her] power to search." *Groh v. Ramirez*, 540 U.S. 551, 561 (2004). Of which, it has long been held that a

14

warrant is required to search the contents of a cellphone. *Riley v. California*, 573 U.S. 373, 403, (2014).

**A. Law enforcement acted with intentional disregard when they searched Mr. Schroeder's phone without a warrant and later used the information learned in that warrantless search to direct their un-*Mirandized* interrogation, which led directly to their subsequent efforts in obtaining consent to search.**

The Fourth Amendment's probable cause and warrant requirements do not apply where an authorized party voluntarily consents to a search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, (1973). Ostensibly, a search warrant is not required when law enforcement searches a cell phone following the owner's consent. *See United States v. Thurman,* 889 F.3d 356, 366 & n.9 (7th Cir. 2018). As such, in determining whether a statement or confession was voluntary, courts must examine the record and apply the totality of circumstances test. *See Arizona v. Fulminante,* 499 U.S. 279, 286–87 (1991).

In examining all the surrounding circumstances to determine if in fact the consent to search was coerced, account must be taken of subtly coercive police questions, as well as the possible vulnerable subjective state of the person who consents. *Bustamonte,* 412 U.S. at 229. Relevant factors include (1) the person's age, intelligence, and education, (2) whether he was advised of his constitutional rights, (3) how long he was detained before he gave his consent, (4) whether his consent was immediate, or was prompted by repeated requests by the authorities, (5) whether any physical coercion was used, and (6) whether the individual was in police custody when he gave his consent. *United States v. Strache,* 202 F.3d 980, 985 (7th Cir.2000).

15

Other factors this court can consider are whether *Miranda* warnings were given prior to the search, and whether the defendant was told they had a right to withhold their consent to the search. *United States v. Kim,* 25 F.3d 1426, 1431 (9th Cir.1994). However, no single factor is dispositive. *United States v. Chaidez,* 906 F.2d 377 (8th Cir.1990). The government bears the burden of proving, by a preponderance of the evidence, that consent was freely and voluntarily given. *U.S. v. Raibley*, 243 F.3d 1069 (7th Circ. 2001).\

Further, analyzing whether consent is valid despite unlawful police conduct, courts consider (1) the time elapsed between the illegal conduct and the discovery of the evidence; (2) the existence of intervening circumstances; and (3) the nature of the official misconduct. *Brown v. Illinois,* 422 U.S. 590, 603-04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

Law enforcement used clear deception and strong-arm tactics that intimidated Mr. Schroeder, and only then was clearly coerced consent offered to law enforcement. Equally important to the voluntariness analysis is the fact that Mr. Schroeder was not informed of his right to withhold consent to search, particularly after they demanded his passwords, and already searched his phone without a warrant. *See Schneckloth*, 412 U.S. at 248–49 (subject's knowledge of a right to refuse is a factor to be taken into account).

Moreover, instead of initially seeking his consent, Detective Steber decided to search through Mr. Schroeder's phone, including scrolling through his Snapchat account. Detective Steber then directed his interrogation using the information he had illegally obtained and further avoided advising Mr. Schroeder of his rights, and only then did law enforcement obtain his consent to search the contents of the phone. It is further anticipated that Mr. Schroeder will testify that he would not have given his consent to

16

search his phone had he been advised of his right refuse, and to seek law enforcement to obtain a warrant to search it.

Law enforcement has known for over a decade that a warrant is required to access the intimate details within Mr. Schroeder's phone. *Riley*, 573 U.S at 403. Illustrated against the backdrop of the actions undertaken at the time of the warrant, the totality of the circumstances demonstrates a deliberate and coordinated effort by law enforcement to subvert constitutional rights and dupe Mr. Schroeder into believing he was not in custody and to waive his rights as well as grant them access to areas they had already searched to cover their tracks. Law enforcement's actions were wholly intentional, and the tactics used were to intentionally elicit consent to search his phone. As such, their actions in obtaining consent to search from Mr. Schroeder are blatantly unconstitutional and demand suppression.

**B. To meaningfully deter law enforcement from continuing this intentional behavior of subverting constitutional protections the exclusionary rules must apply and suppress the poisoned fruits of their search.**

The Supreme Court has long recognized the need to exclude evidence obtained in violation of the Constitution's protections. *See Weeks v. United States,* 232 U.S. 383, 398 (1914). Exclusion will run not only to the unconstitutionally obtained evidence, but also to the fruits of that evidence—the so-called fruit of the poisonous tree. *United States v. Conrad,* 673 F.3d 728, 732 (7th Cir. 2012).

When the government obtains evidence in violation of the Fourth Amendment, the primary purpose of the exclusionary rule "is to deter future unlawful police

17

conduct." *United States v. Calandra,* 414 U.S. 338, 347 (1974). The exclusionary rule is premised on suppressing evidence that "is *in some sense* the product of illegal governmental activity." *Nix v. Williams,* 467 U.S. 431, 444 (1984) (emphasis in original). This rule applies unless the government shows sufficient attenuation from the illegality to dissipate the "taint." *Murray v. United States*, 487 U.S. 533, 536-37 (1988). However, the application of the exclusionary rule must be weighed against the social costs and requires a balancing of relevant public interests. *Illinois v. Krull,* 480 U.S. 340, 352-53 (1987).

The exclusionary rule applies to both tangible and intangible evidence and also excludes derivative evidence under certain circumstances, via the fruit of the poisonous tree doctrine, if such evidence is obtained "by exploitation of that illegality." *Wong Sun,* 371 U.S. at 485-88. The scope of this remedy is to prevent the State from "profit[ing] from its illegal activity." *Murray,* 487 U.S. at 542. The rule excludes the unlawfully obtained evidence to "meaningfully deter" police misconduct such that interfering with the criminal justice system's truth-seeking objective is justified. *Herring v. United States*, 555 U.S. 135, 144 (2009).

Police misconduct is sufficiently deliberate and can be effectively deterred through the exclusion of evidence where the conduct is "deliberate, reckless, or grossly negligent," or, in some circumstances, where the conduct involves "recurring or systemic negligence." *Id.* In contrast, police misconduct is not sufficiently deliberate "when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence." *United States v. Leon,* 468 U.S. 897, 918 (1984).

18

If the consent to search results from an independent act of free will, *see United States v. Pedroza,* 269 F.3d 821, 827 (7th Cir. 2001), or is sufficiently attenuated from the illegal police activity, *see United States v. Jerez,* 108 F.3d 684, 694-95 (7th Cir.1997), the taint is "purged" and the consent is valid. *Wong Sun* not only requires that the statement meet the Fifth Amendment standard of voluntariness, but it must also be sufficiently an act of free will to purge the primary taint. *Brown,* 422 U.S. at 602.

The concern in attenuation cases is whether the connection between the illegal police activity and a later statement has become so attenuated as to dissipate the taint. *See Id.* If a defendant's statement and consent to search were obtained by exploitation of prior illegal police activity, then any statements and evidence obtained during a search must be excluded. *See Id.* at 603; *Wong Sun*, 371 U.S. at 488.

As a measure to "meaningfully deter" law enforcement, the good faith doctrine does not save their actions, and the exclusionary rule must apply. Here, all of the fruits relating to Victim 1 are poisoned: from Mr. Schroeder's alleged confessions to the warrantless search of his phone and later coerced consent to search, to the following interviews. Additionally, law enforcement would have had no knowledge of Victim 1 had they properly advised Mr. Schroeder of his constitutional rights. Ultimately, Victim 1's forensic interviews are a direct byproduct of Mr. Schroeder's rights being violated. There is no attenuation, and there is no cure. The order of events clearly demonstrates that law enforcement ignored constitutional protections and Mr. Schroeder's constitutional rights for the convenience of a fruitful interrogation.

Any objectively reasonable officer would have understood the necessity for either consent or a warrant before opening and searching through Mr. Schroeder's phone and Snapchat account. Detective Steber did not have any knowledge regarding the allegations associated with Victim 1 prior to his violation of Mr. Schroeder's *Miranda* rights and subsequent unconstitutional search of his phone and Snapchat account. To uphold these actions would allow law enforcement to subvert constitutional protections that require them to obtain consent before searching, or wait for a warrant as required under *Riley*, 573 U.S at 403.

Further, any warrant obtained in this matter relied solely on the statements obtained in violation of Mr. Schroeder's constitutional rights. Therefore, the evidence obtained from those warrants is tainted and should be suppressed.

Where the use of illegally obtained evidence is the basis of continued investigative efforts of law enforcement and subsequent fruits are obtained as a result of those efforts, the taint cannot be purged from the entirety of the investigation. To hold otherwise would clearly and unlawfully allow law enforcement to "profit from its illegal activity." *Murry*, 487 U.S. 542. In addition, the benefit of suppression outweighs the societal cost of excluding evidence obtained from law enforcement's unlawful search in this case.

<h1 style="text-align:center">CONCLUSION</h1>

For the reasons stated above, the anticipated evidence, and arguments of counsel, Mr. Schroeder respectfully requests that this Court grant his motion to suppress his statements to police, any fruits from the post-*Miranda* interrogation, and all evidence derived from the illegal search and seizure, including any evidence obtained from warrants based solely on those un-*Mirandized* statements. Mr. Schroeder reserves the right to further supplement his arguments and moves this court for an evidentiary hearing on the issue.

Dated this 4th day of September, 2025.

Respectfully submitted,

GIMBEL, REILLY, GUERIN & BROWN LLP

By: *Electronically signed by Jason D. Luczak*
    JASON D. LUCZAK
    State Bar No. 1070883
    Email: jluczak@grgblaw.com
Attorney for Defendant

POST OFFICE ADDRESS:

330 East Kilbourn Avenue, Suite 1170
Milwaukee, Wisconsin 53202
Telephone: 414/271-1440

21